UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELO TORRES, | Civil Action No. 19-17704 (FLW) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| MONMOUTH COUNTY CORRECTIONAL INSTITUTION, et al., | |
| Defendants. | |

This matter has been opened to the Court by a motion to dismiss brought by Monmouth County (the "County"), Mercer County Correctional Institute ("MCCI"), Corrections Officer Aleksandrs Urjans ("Officer Urjans"), and Warden Barry Nadrowski (Warden Nadrowski") (collectively, the "County Defendants"), seeking dismissal of Plaintiff's Amended Complaint for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). ECF Nos. 25-26. For the reasons explained in this Memorandum Opinion, the motion to dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.

I.  **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

a. Factual Background

The well-pleaded allegations in the Complaint are construed in Plaintiff's favor. On or about September 11 and 12, 2017, Decedent Mr. Torres was in his assigned detox bed at MCCI which has a detox unit, a shared area, and a medical unit. *See* Amended Complaint at ¶ 3. Mr. Torres was being housed in the detox unit of MCCI and was medicated with Librium, which

1

caused him to appear to be under the influence of drugs.[1]  *Id.* ¶ 6.  Another inmate demanded that Mr. Torres give him the heroin he appeared to be using, and the inmate then assaulted Mr. Torres.[2]  *Id.* ¶¶ 5, 7.  An unidentified corrections officer intervened and stopped the initial assault.  *Id.* ¶ 8.

After the initial assault, Mr. Torres specifically advised Officer Urjans that other inmates believed Mr. Torres was in possession of heroin and that he was fearful for his safety.  *Id.* ¶¶ 11-12, 24-25.  Mr. Torres asked Officer Urjans to move him to a different area, specifically Pod A.  *Id.* ¶ 12.  Officer Urjans declined to move Mr. Torres to a different pod, and instead told Mr. Torres: "That's not happening, but you can move your bed if you want."  *Id.* ¶ 13.  Mr. Torres moved his mattress/bed to the only available location, approximately 10 feet away.  *Id.* ¶ 14.

Approximately an hour or two later, Mr. Torres was sitting in bed when the same inmate who previously attacked him earlier, along with 5 to 6 other inmates, grabbed Mr. Torres and forced him to a different area of the detox unit.  At that time, Mr. Torres was held down by the inmates while one of the inmates put a rubber glove on his hand and penetrated Mr. Torres' anus searching for drugs.  *Id.* ¶¶ 15-18.  Defendant Officer Urjans did not come to Mr. Torres' assistance as he was being attacked.  *Id.* ¶ 19.  Mr. Torres passed out from the attack and was hospitalized as a result of the assault.  *Id.* ¶¶ 21-22.  Mr. Torres also suffered mental and emotional injuries from the attack.  *Id.* ¶¶ 39-40.

---

[1] As explained in the Amended Complaint, Librium is a benzodiazepine used to treat alcohol withdrawal that was provided by the medical staff at MCCI due to Mr. Torres' detox/alcoholism.
[2] Defendant Roger M. Bremekamp was indicted for sexually assaulting Plaintiff at MCCI on or about September 11 and 12, 2017.

In addition to the allegations against Defendant Officer Urjans and the unidentified corrections officers and MCCI employees, the Amended Complaint includes the following allegations against the County, MCCI, and Warden Nadrowski:

> 13. Defendants County of Monmouth, MCCI, Warden Nadrowski and John Doe Corrections Officers 1-10 and John Doe County Employees 1-10, supervisor defendants, permitted, encouraged, tolerated, ratified and were deliberately indifferent to a pattern, practice and custom of said defendants committing the acts complaint of in this complaint, including but not limited to failing to hire, train and supervise employees with regard to proper protocol in dealing with inmate safety when threatened by other inmates and/or the failure to implement proper safety protocol to protect an inmate from other inmates.
>
> 14. Defendants County of Monmouth, MCCI, Warden Nadrowski and John Doe Corrections Officers 1-10 and John Doe County Employees 1-10, supervisor defendants, developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in incarcerated at the MCCI such that Defendant Correction Officer Urjans, John Doe Corrections Officers 1-10 and John Doe County Employees 1-10 who engaged in the alleged misconduct by not protecting Plaintiff following a verified threat to his safety believed that their actions and/or inactions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.
>
> ….
>
> 43. The County of Monmouth, MCCI and Warden Nadrowski developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons incarcerated at the MCCI such that Defendant Correction Officer Urjans, John Doe County Employees 1-10 and John Doe Correction Officer 1-10 who engaged in the alleged misconduct by not protecting Plaintiff following a verified threat to his safety believed that their actions and/or inactions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

Defendant MCCI is identified as a duly authorized department/agency of the County of Monmouth. *Id.* ¶ 2. The County is identified as "a duly authorized county government authorized under the laws of the State of New Jersey" that owns, operates, controls and/or directs

defendants MCCI and the individual Defendants. *Id.* ¶ 3. Defendant Warden Nadrowski is identified as the prison official who is responsible for the operation of MCCI. *Id.* ¶ 4.

Prior to filing suit, Plaintiff requested information about the assault from MCCI, the Monmouth County Prosecutor Office, and Monmouth County, but those requests were denied. *Id.* ¶¶ 9-11.

The Amended Complaint asserts claims pursuant to 42 U.S.C. § 1983 for failure to protect under the Eighth Amendment (Count 1) and unsafe conditions under the Fourteenth and Fourth Amendments (Count 2). The Amended Complaint also asserts "civil rights" claims of negligent hiring, training, and supervision (Counts 3 and 4), state law claims for negligent and intentional infliction of emotional distress (Counts 5-6), as well as claims for punitive damages and joint and several liability (Counts 8-9).[3]

### b. Procedural History

The original Complaint was filed on September 6, 2019, and the County Defendants Answered on November 22, 2019. After Mr. Torres's death, counsel for Plaintiff submitted a motion pursuant to Rule 25 of the Federal Rules of Civil Procedure, to substitute Plaintiff and to amend the complaint to replace the deceased Mr. Torres with Mr. Michael Torres, as executor of his estate. ECF No. 22, 23. The motion to substitute was unopposed and was granted by the Magistrate Judge on December 9, 2021. ECF No. 24. The Order granting the motion directed County Defendants to respond to the Amended Complaint. *See id.* The only change to the Amended Complaint is the substitution of Mr. Michael Torres, Executor, as Plaintiff. *See* ECF No. 25.

---

[3] Count 7 asserts a state law claim for assault against Defendant Bremekamp.

County Defendants filed the instant motion to dismiss on January 18, 2021. ECF No. 26. County Defendants do not challenge the substitution; instead they have moved to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[4] Plaintiff opposes the motion to dismiss on the merits. ECF No. 35. The matter is fully briefed and ready for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R .Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] Plaintiff has not argued that the County Defendants' filing of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is procedurally improper. To the extent a Rule 25 substitution does not require a new answer and/or trigger a new opportunity to file a Rule 12(b)(6) motion, Defendants' arguments for dismissal could be made in a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and the standard for dismissal are the same.

### III.  DISCUSSION

The gravamen of Plaintiff's Amended Complaint asserts failure to protect claims pursuant to 42 U.S.C. § 1983 against Defendant Urjans and other unidentified corrections officers and/or MCCI employees arising from the inmate attack on Mr. Torres that occurred at MCCI in September 2017.  Plaintiff also asserts § 1983 claims against MCCI, the County, and Warden Nadrowski pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), and various state law claims against the County Defendants under the New Jersey Tort Claims Act ("TCA"), N.J.S.A. 59:1–1, et seq.  The Court first considered the federal claims followed by the state law claims.

#### a.  Federal Claims Pursuant to 42 U.S.C. § 1983

The Court first addresses the § 1983 claims against Officer Urjans.  The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates."  *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  The Eighth Amendment's prohibition against the infliction of cruel and unusual punishment has been interpreted to impose upon prison officials a duty to take reasonable measures "to protect prisoners from violence at the hands of other prisoners."  *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir.1997) (quoting *Farmer*, 511 U.S. at 833 (internal citations omitted).  Not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety[,]" and relief is limited to situations where the prison official demonstrated "deliberate indifference" for the plaintiff's health and safety.  *Farmer*, 511 U.S. at 834.  A failure-to-protect claim brought by a pretrial detainee arises under the Fourteenth Amendment, and the standard for such a claim is also deliberate indifference.  *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Del Ctr.*, 372

F.3d 572, 587 (3d Cir. 2004) (applying the same failure-to-protect standard under both the Eighth and Fourteenth Amendment claims); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment.").

"'Deliberate indifference' is a subjective standard whereby 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Harvey v. Gloucester Cty. Jail*, Civ. No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).  It is not enough that an officer "should have known of the risk," the officer must have had actual knowledge.  *See Beers Capitol*, 256 F.3d at 133.  A plaintiff may, however, demonstrate that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Plaintiff asserts a failure to protect claim against Defendant Officer Urjans in Counts 1 and 2 of the Amended Complaint.  To state a viable failure-to-protect claim against Defendant Urjans, Plaintiff must provide facts showing that: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the [defendant-officer] was deliberately indifferent to that substantial risk ..., and (3) the [defendant's] deliberate indifference caused [the plaintiff's] harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012); *see also Beers–Capitol*, 256 F.3d at 133.  At the pleading stage, Plaintiff has provided sufficient facts to suggest that Officer Urjans was deliberately indifferent to a substantial risk of serious harm that Mr. Torres would be attacked by inmates a second time.  Crucial to the Court's determination are the facts that Mr. Torres allegedly told Officer Urjans that he feared for his safely after the first inmate attack and asked to be moved to a different unit, but Officer Urjans denied his request and only permitted Mr. Torres to move his bed 10 feet away, a concession that plainly would not protect him from

further harm. The County Defendants appear to argue that Defendant Urjans acted reasonably because Mr. Torres was heavily medicated, but the Court finds that at the pleading stage, it must draw all inferences in Plaintiff's favor, and that the reasonableness of Defendant Officer Urjans' conduct cannot be determined at the motion to dismiss stage. As such, the motion to dismiss is denied as Defendant Urjans as to the failure to protect claim under § 1983, with caveat that this claim is properly a claim for failure to protect under the Fourteenth Amendment (rather than the Eighth Amendment).[5] The claims under the Eighth Amendment are dismissed with prejudice as to all County Defendants because Mr. Torres was not a convicted prisoner at the time of the incident.

Count 2 of the Amended Complaint also purports to bring a claim based on "unsafe conditions" under the Fourth and Fourteenth Amendments. It is not clear how the Fourteenth Amendment Due Process claim premised on unsafe conditions differs, if at all, from the failure to protect claim, which shall proceed against Defendant Urjans, and this claim is dismissed without prejudice to the extent it is a separate claim. Because there are no allegations that could sustain a Fourth Amendment claim against Defendants Urjans or any of the County Defendants,

---

[5] In denying the motion to dismiss the failure to protect claim, the Court notes that "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer "had a reasonable opportunity to intervene and simply refused to do so[.]" *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002), and a pretrial detainee may also assert a failure to intervene claim under the Fourteenth Amendment. Here, however, there are no well-pleaded allegations that Defendant Urjans witnessed either assault, had reasonable opportunity to intervene in either assault, and failed to do so. As such, the Court does not construe a failure to intervene claim against Defendant Urjans.

the Fourth Amendment claim in Count 2 is also dismissed without prejudice as to all County Defendants.[6]

The Court also grants the motion to dismiss the § 1983 claims as to Defendant Warden Nadrowski in his personal capacity as a supervisor. It is well established that to be held liable under § 1983, a supervisor must be personally involved in the alleged wrongs, and liability may not be premised solely on *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two basic ways that a supervisor may be held liable under § 1983 for the conduct of subordinates – through direct participation or through policymaking. With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original).

Here, there are as no allegations that Defendant Nadrowski was personally involved in the alleged failure to protect Plaintiff from the second assault, i.e., that he directed Defendant Officer Urjans to ignore Plaintiff's safety, that he participated in the alleged violation, or had contemporaneous knowledge of the misconduct and acquiesced in it. Nor are there any well-pleaded allegations that Defendant Nadrowski enacted specific deficient policies (or failed to

---

[6] The preamble of the Complaint also mentions Sixth Amendment violations, but none of the Counts mention this claim, and there are no facts to support a Sixth Amendment violation. The Court therefore does not construe or address a Sixth Amendment claim.

enact specific policies) or that he provided deficient training or supervision, such that he can be held liable personally as a supervisor. As such, the § 1983 failure to protect claims are dismissed without prejudice as to Defendant Nadrowski in his personal supervisory capacity.

Plaintiff also asserts § 1983 claims under *Monell* against MCCI, the County (and possibly Defendant Nadrowski) based on allegedly deficient policies, practices and/or custom and/or deficient hiring, training, and supervision. The Court begins by dismissing with prejudice the *Monell* claims against MCCI. Although a county may be liable under § 1983, it is well-established that county jail is not a proper defendant under § 1983. *See e.g., Abner v. Somerset County Jail*, No. 18-16911, 2019 WL 1904880, at *2 (D.N.J. Apr. 29, 2019).

Plaintiff also fails to state a *Monell* claim for relief against the County. Like supervisory liability, municipal liability under § 1983 may not be proven under a *respondeat superior* theory of liability but must instead be founded on allegations that the government itself supported a violation of constitutional rights. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipal liability exists only where execution of the municipality's policy or custom, whether made by lawmakers or decisionmakers whose edicts may fairly represent official policy, inflict the injury. *Id.* at 694.

Under Third Circuit law, when a plaintiff brings a complaint under *Monell* against a municipality, the specific offending custom, policy, or practice must be pleaded in the complaint. *See McTernan v. City of York*, 564 F.3d 636, 638 (3d Cir. 2009) ("To satisfy the pleading standard, [a plaintiff] must identify a custom or policy and specify what exactly that custom or policy was.") (citing *Philips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)). In addition, a plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries, *see Estate of Roman v. City of Newark*, 914 F.3d 789, 798 ( 3d Cir. 2019) (citing *Kneipp v. Tedder*,

10

95 F.3d 1199, 1213 (3d Cir. 1996), "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges. *See id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)). At the pleading stage, this generally requires some facts that tend to show that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to the injuries in question. *See id.*

In *McTernan v. City of York*, 564 F.3d at 659, the Third Circuit affirmed dismissal of claims against a municipality because that plaintiff alleged only that he was injured by "the City's policy of ignoring First Amendment right[s]." *Id.* at 658. Similarly, in *Wood v. Williams*, 568 F. Appx. 100, 104 (3d Cir. 2014), the Third Circuit affirmed dismissal of claims against a municipality because plaintiff alleged only that defendants maintained a "policy and/or custom ... to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise BAVTS employees ... thereby failing to adequately discourage Constitutional violations on the part of BAVTS employees." 568 F. App'x. at 103 (omissions in original).

Here, Plaintiff's policy and/or custom allegations are extremely sparse; Plaintiff asserts that unspecified policies and/or customs led corrections officers, including Defendant Officer Urjans, to believe "that their actions and/or inactions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated." *See* Amended Complaint ¶ 14. Plaintiff offers no additional facts to support his allegations that such a policy or custom existed or that there were any prior similar incidents that would have put policymakers on notice that unlawful conduct was occurring. As such, the allegations that a policy and/or custom caused the constitutional violation are too conclusory to state claim for relief as to the County (and Warden Nadrowski to the extent he is the alleged

policymaker), and these *Monell* claims are dismissed without prejudice for failure to state a claim for relief.

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. "The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798 (citing *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation ... under § 1983.")). To plead a claim based on failure to train (and/or supervise), a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman,* 914 F.3d at 798-800 (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* at 798 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). In some instances, "the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *City of Canton, Ohio*, 489 U.S. at 390 n. 10). "Liability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)).

Once again, Plaintiff's allegations regarding the failures to train and supervise are extremely vague, and he fails to provide any well-pleaded facts about the current training and supervision (either generally or on the date of the incident) or facts showing a pattern of prior incidents that would suggest a need for additional training or supervision. Plaintiff also fails to plead sufficient facts to suggest that it was obvious that a lack of training and/or supervision would lead to a constitutional violation, such that a single incident would be sufficient under *Monell*. For these reasons, the Court will also dismiss without prejudice the *Monell* claim against the County and Defendant Nadrowski premised on inadequate training and supervision.[7]

### b. State Law Claims

Plaintiff also appears to assert state law claims of negligent hiring, supervision, and training against the County, MCCI, and Warden Nadrowski, and claims of negligent and intentional infliction of emotional distress ("NIED" and "IIED") against the County, MCCI, Warden Nadrowski, and Defendant Urjans.[8] The County Defendants maintain that Plaintiff's state law tort claims are barred by the immunity conferred on public entities and employees by the TCA, and that the Plaintiff also fails to state any claim for relief under state law.[9]

---

[7] Plaintiff asserts that he is unable to provide additional facts about the policies, customs, training, and/or supervision without discovery, and should be permitted to engage in discovery prior to the dismissal of his *Monell* claim. The Court has denied the motion to dismiss as to the Fourteenth Amendment failure to protect claim against Defendant Officer Urjans in his personal capacity, and nothing in this decision prevents Plaintiff from seeking discovery regarding whether Defendant Officer Urjans acted pursuant to (or in violation of) any policies or customs, whether he was adequately trained and supervised, and/or whether any prior similar incidents occurred at MCCI. If discovery reveals a basis for one or more *Monell* claims, Plaintiff may seek leave to file a motion to amend his Complaint to the extent he can meet the requirements of Rule 15.

[8] The Counts of the Complaint asserting negligent hiring, training, and supervision are confusing, as these counts also refer to "civil rights" violations, but the parties appear to agree that Plaintiff also asserts claims under the TCA.

[9] Plaintiff argues that the issue of immunity is better suited to summary judgment, but Courts in this District have addressed immunity under the TCA at the motion to dismiss stage where

13

The TCA provides that public entities are not liable for a tortious injury, except as set forth in the Act. N.J.S.A. § 59:2–1a; *Chatman v. Hall*, 128 N.J. 394, 402 (1992). The liability imposed on public entities by the TCA is primarily that of *respondeat superior*: "[W]hen the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity." *Tice v. Cramer*, 133 N.J. 347, 355 (1992). With respect to public employees, the TCA renders them liable for tortious acts to the same extent as private individuals, unless there is an applicable immunity provided by the Act itself, or by other laws. *Id.* (noting that the public employee's liability is also "subject to any defenses that would be available" to a private person, pursuant to section 59:3–1b of the Act); N.J.S.A. 59:3–1a. As relevant here, the TCA carves out several "immunizing" exceptions to these general liability provisions, including the exception set forth in N.J.S.A. 59:5–2:

> Neither a public entity nor a public employee is liable for ...
> (b) any injury caused by:
> (1) an escaping or escaped prisoner
> (2) an escaping or escaped person; or
> (3) a person resisting arrest; or
> (4) a prisoner to any other prisoner.

Immunity under section 59:5-2(b)(4) of the TCA regarding prisoner-on-prisoner assault "recognizes the practical problems inherent in supervising prisoners [and] [w]hile it is necessary to provide supervision, the decision to do so ... should not be threatened with tort liability."

---

immunity is apparent on the face of the complaint. *See, e.g. Endl v. New Jersey*, 5 F.Supp.3d 689, 700 (D.N.J. 2014) (finding that UMDNJ, a state entity, was immune from liability under the TCA and granting motion to dismiss on that basis); *Bellocchio v. N.J. Dep't of Envtl. Prot.*, 16 F.Supp.3d 367, 380–381 (D.N.J. 2014) (granting motion to dismiss "any tort claims asserted by Plaintiffs against the [New Jersey Turnpike Authority] because the NJTA is immune from suit under the TCA.")

*White v. Lewis*, 156 N.J. Super. 198, 201 (App. Div. 1978).  The Appellate Division in *White* further explains that the "N.J.S.A. 59:5-2(b)(4) was intended to insulate a public entity and employee from liability ... even if the employee is negligent or grossly negligent in carrying out ... [his] duties."  *See id.* at 202; *see also Walker v. Glover*, No. 06-5211, 2008 WL 4606312 (D.N.J. Oct. 16, 2008) (holding that even where defendant prison employees knew or should have known that placing plaintiff in a certain jail cell would pose a serious risk of injury to Plaintiff, employees were immune from the injuries that resulted therefrom under N.J.S.A. 59:5-2(b)(4)); *Bona v. Wynn*, 311 N.J. Super. 257 (Law Div. 1997) (holding that where a jailor would normally be liable for violating N.J.S.A. 30:8-5 by placing a debtor in same cell as criminals, wherein said debtor is assaulted by cell-mates, N.J.S.A. 59:5-2(b)(4) absolves jailor of liability).

Immunity under the TCA is nevertheless "subject to an outer limit[,]" such that "willful misconduct" by a public employee is "expressly excluded from the scope of the [TCA's] immunity."  *Tice*, 133 N.J. at 375 (citing N.J.S.A. 59:3–14a).  This exception applies to a public employee whose conduct "was outside the scope of his [or her] employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. § 59:3–14a.  Notably, however, if a public employee engages in willful misconduct, the public entity which employees him or her is not vicariously liable such conduct.  N.J.S.A. § 59:2–10.

Here, the Amended Complaint plainly alleges that Plaintiff's injuries arose from an attack by a fellow prisoner.  As such, the County Defendants are absolutely immune from suit under the TCA <u>for all acts of negligence</u>, and the tort claims for negligent hiring, training, and supervision, as well as the NIED claims are dismissed <u>with prejudice</u> as to all County Defendants because it is clear on the face of the complaint that they are entitled to immunity.

15

Because public employees may still be liable under the willful misconduct exception, the Court next addresses whether the Amended Complaint sufficiently alleges that Warden Nadrowski and Officer Urjans engaged in any willful misconduct. "[W]illful misconduct," for purposes of the TCA, "is not immutably defined[,] but takes its meaning from the context and purpose of its use[.]" *Fielder v. Stonack*, 141 N.J. 101, 124 (1995) (considering willful misconduct in the context of a police pursuit). The New Jersey Supreme Court has described willful misconduct as "much more" that mere negligence: willful misconduct requires actual knowledge that the act is wrongful. *Id.* (explaining that prior decisions "have suggested that willful misconduct is the equivalent of reckless disregard for safety").

In *Bernstein v. State*, 411 N.J. Super. 316, 332 (N.J. Super. App. Div. 2010), the Appellate Division considered the willful misconduct exception in the specific context of prisoner-on-prisoner assault. There, a plaintiff sued defendant public entities and prison officials on behalf of his deceased son, a prisoner who had been attacked and killed by another prisoner. After abandoning his tort claims against the public entity defendants because they were entitled to immunity under N.J.S.A. 59:5–2 and N.J.S.A. § 59:2–10, the plaintiff sought to hold the individual prison officials liable under the TCA under the "willful misconduct" exception to immunity. *See id.* The New Jersey Superior Court, Appellate Division affirmed the trial court's grant of summary judgment to the individual prison officials because there was a lack of evidence that the corrections officers acted with actual knowledge that they were violating an express, unequivocal order or command. 411 N.J. Super. at 333 (noting that, indeed, there was a question whether any policy was even violated). With respect to the prison administrator defendants, the Appellate Division further held that there was no proof that the prison policy (which allegedly delayed assistance to the plaintiff when he was attacked) "deviate[d] from a

standard of care for correctional facilities." *Id.* Finally, there was no evidence that any of the defendants were aware that the attacking prisoner posed a danger to the other inmates, such that he should have been administratively segregated prior to the attack on the plaintiff. *Id.* at 32–33.

Here, the Amended Complaint does not provide sufficient facts to suggest that Officer Urjans knowingly violated any specific policies, protocols, or orders with respect to inmate safety, which could establish willful misconduct.[10] *See Bernstein*, 411 N.J. Super. at 333. The Amended Complaint does, however, assert an IIED claim against Defendant Urjans. To establish a claim for IIED under New Jersey law, a plaintiff must provide facts showing that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the actions proximately caused emotional distress; and (4) the emotional distress was severe. *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). Here, Plaintiff has sufficiently pleaded that Officer Urjans engaged in reckless conduct and that his conduct resulted in severe emotional distress. Plaintiff's allegations that Defendant's Urjans' conduct was extreme and outrageous are borderline, but at this early stage the Court will permit the IIED claim to proceed against Officer Urjans based on his complete inaction after Plaintiff told Urjans he feared being attacked again by other inmates and asked to be moved to a new unit, as well as Urjans' statement that Plaintiff could move his bed 10 feet away from the location where he was initially attacked.[11] *See, e.g., Conte v. Goodwin*, No. 19-8333, 2021 WL 141337, at *8 (D.N.J.

---

[10] At the pleading stage, Plaintiff need not provide evidence; rather, the Amended Complaint must provide some facts to suggest that Officer Urjans violated a policy, protocol, order, or command in his interactions with plaintiff. To the extent discovery reveals evidence that Officer Urjans did violate policies, protocols, orders, or commands or otherwise engaged in willful misconduct, Plaintiff would be free to seek leave to file a motion to amend his Complaint.

[11] It is not entirely clear whether Plaintiff specifically told Officer Urjans about the first attack, but the Court infers from the allegations that Plaintiff did allegedly mention the first attack to Officer Urjans.

Jan. 15, 2021) (finding that plaintiff adequately pleaded IIED claim against corrections officers who knew Plaintiff was having a heart attack, refused to get help for him, and laughed at his distress).

The Court will dismiss <u>without prejudice</u> the IIED claims against Warden Nadrowski in his personal capacity, because there are no well-pleaded allegations that he engaged in any acts of willful misconduct, either directly or through policymaking, hiring, training, or supervision.

The IIED claims premised on Defendant Urjans' alleged misconduct are also dismissed <u>with prejudice</u> as to the County and MCCI because entity defendants are not vicariously liable for any willful misconduct by their employees. *See Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) ("[T]he Court cannot find Defendants – public entities – liable for [IIED].") (citing N.J. Stat. Ann. § 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct.")).

Finally, County Defendants seek dismissal of Plaintiff's claim for joint-and-several liability and punitive damages. New Jersey's joint-and-several liability statute does not create an independent basis for tort liability. *See Bullock v. Ancora Psychiatric Hosp.*, No. 10-1412, 2011 WL 3651352, at *12 (D.N.J. Aug. 18, 2011) (citing N.J. Stat. Ann. § 2A:15–5.3). The statute provides that a plaintiff may collect an entire judgment from any defendant who is found to be "60% or more responsible for the total damages." N.J. Stat. Ann. § 2A:15–5.3. Because the only County Defendant remaining in the case is Defendant Urjans, Plaintiff may pursue joint and several liability against him on the state law tort claims, and this Count is dismissed as to the remaining County Defendants. The Court also denies the motion to dismiss the punitive damage

claims against Officer Urjans,[12] because punitive damages are available "in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). At this early stage of the proceeding, Plaintiff has stated a Fourteenth Amendment failure to protect claim against Officer Urjans and has provided sufficient facts to suggest at least reckless indifference to Plaintiff's civil rights by this Defendant.

## IV. CONCLUSION

The County Defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss is denied as to the Fourteenth Amendment failure to protect and state law IIED claims against Officer Urjans. The motion to dismiss is also denied as to the punitive damages claims and the request for joint-and-several liability as to Officer Urjans. The motion to dismiss is otherwise granted as follows: the Eighth Amendment claims are dismissed with prejudice as to all County Defendants. The *Monell* claim against MCCI is dismissed with prejudice. The state law tort claims for negligent hiring, training, and supervision, as well as the NIED claims, are dismissed with prejudice as to all County Defendants. The claims for punitive damages are dismissed with prejudice as to the County and MCCI. The remaining claims are dismissed without prejudice for the reasons stated in this Memorandum Opinion. An appropriate Order follows.

---

[12] There are no live claims against MCCI, the County, or Warden Nadrowski. It bears noting, however, that a municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Smith v. Borough of Dunmore*, 633 F.3d 176, 183 (3d. Cir. 2011). Similarly, punitive damages are not permitted against public entities under the TCA. *See* N.J.S.A. § 59:9-2. As such, the punitive damages claims against MCCI and the County are dismissed with prejudice. The punitive damages claims against Warden Nadrowski are dismissed without prejudice.

<u>/s/ Freda L. Wolfson</u>
Freda L. Wolfson
U.S. Chief District Judge

DATED: August 25, 2021.